**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

In re                                                                Chapter 7

ROMAN SLEDZIEJOWSKI,                                                  Case No. 13-22050 (RDD)

                          Debtor.

-----------------------------------------------------------------x

In re                                                                Chapter 7

INNOVEST HOLDINGS, LLC,                                               Case No. 13-22748 (RDD)

                          Debtor.

-----------------------------------------------------------------x
MARIANNE T. O'TOOLE, as Chapter 7 Trustee of
the Estate of Roman Sledziejowski,

                          Plaintiff,

            vs.                                                      Adv. No. 15-08207 (SHL)

MYPLACE DEVELOPMENT SP. Z O.O.,
MYPLACE DEVELOPMENT SP. Z O.O. S.K.A.,
SEBASTIAN TOMASZ KULCZYK, KULCZYK
REAL ESTATE HOLDING S.A.R.L., KULCZYK
INVESTMENTS S.A., KULCZYK HOLDING S.A.,
TWS INVESTMENT PARTNERS LLC, JOHN
DOE "1" through "100", JANE DOE "1"through
"100", JOHN DOE CORPORATIONS "1" through
"100", and OTHER JOHN DOE ENTITIES "1"
through "100",

                          Defendants.

-----------------------------------------------------------------x
MARIANNE T. O'TOOLE, as Chapter 7 Trustee of
the Estate of Innovest Holdings, LLC,

                          Plaintiff,

            vs.                                                      Adv. No. 15-08208 (SHL)

MYPLACE DEVELOPMENT SP. Z O.O.,
MYPLACE DEVELOPMENT SP. Z O.O. S.K.A.,
SEBASTIAN TOMASZ KULCZYK, KULCZYK
REAL ESTATE HOLDING S.A.R.L., KULCZYK
INVESTMENTS S.A., KULCZYK HOLDING S.A.,

TWS INVESTMENT PARTNERS LLC, JOHN
DOE "1" through "100", JANE DOE "1"through
"100", JOHN DOE CORPORATIONS "1" through
"100", and OTHER JOHN DOE ENTITIES "1"
through "100",

                              Defendants.
--------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**WINSTON & STRAWN LLP**
*Counsel for MyPlace Development SP. Z O.O.,*
*MyPlace Development SP. Z O.O. S.K.A.,*
*Sebastian Tomasz Kulczyk, Kulczyk*
*Real Estate Holding S.A.R.L., Kulczyk*
*Investments S.A., and Kulczyk Holding S.A.*
200 Park Avenue
New York, New York 10166-4193
By:    Michael Elkin, Esq.
        David Neier, Esq.
        Carrie V. Hardman, Esq.
        Joel Wertheimer, Esq.


**LAMONICA HERBST & MANISCALCO, LLP**
*Counsel for Marianne T. O'Toole, Chapter 7 Trustee of*
*the Estates of Roman Sledziejowski and Innovest Holdings, LLC*
3305 Jerusalem Avenue
Wantagh, New York 11793
By:    Joseph S. Maniscalco, Esq.
        Holly R. Holecek, Esq.
        Nicholas C. Rigano, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the motions of defendants MyPlace Development SP. Z O.O.,

MyPlace Development SP. Z O.O. S.K.A., Sebastian Tomasz Kulczyk, Kulczyk Real Estate

Holding S.A.R.L., Kulczyk Investments S.A., and Kulczyk Holding S.A. (collectively, the

"Movants")[1] to dismiss the above-captioned adversary proceedings.[2]  These adversary

proceedings were brought by Marianne O'Toole, the trustee appointed in the above-captioned

Chapter 7 cases (the "Trustee").  The Trustee seeks, among other things, to avoid and recover

certain alleged fraudulent transfers made to the Movants by Roman Sledziejowsi, one of the

above-captioned debtors, and non-debtor TWS Investment Partners LLC ("TWSIP").  The

transfers relate to the winding up of both Mr. Sledziejowski's equity investment in certain of the

Movants and TWSIP's loan to several of the Movants.  The Movants make several arguments for

dismissal including, but not limited to, that the Court lacks personal jurisdiction over them given

the significant ties that these Movants and transactions have to Poland and their lack of contacts

with the United States.  For the reasons set forth below, the Court concludes that the Trustee has

failed to establish personal jurisdiction over the Movants at this time but that jurisdictional

discovery is appropriate.

## BACKGROUND

Mr. Sledziejowski is a United States citizen and resident of New York.  (Amended

Compl. ¶¶ 9, 61).  In 2006, he formed Innovest Holdings LLC ("Innovest"), one of the above-

captioned debtors, as a Delaware limited liability company with an office in New York.

(Amended Compl. ¶¶ 12, 13).  Innovest is the sole member and 100% owner of defendant

TWSIP,[3] which was also formed as a Delaware limited liability company with an office in New

---

[1]     The Movants include all the named defendants in these two adversary proceedings other than TWS
Investment Partners LLC and numerous unidentified "John and Jane Doe" entities.

[2]     The Movants jointly filed a motion to dismiss in each of the above-captioned adversary proceedings (the
"Motions to Dismiss") [Adv. Pro. No. 15-08207, ECF No. 22; Adv. Pro. No. 15-08208, ECF No. 22].  Because the
motions in the two separate adversary proceedings involve the same parties and issues, the Court has addressed them
together in one decision.

[3]     In the Amended Complaint, the Trustee asks the Court to find that TWSIP is Innovest's alter ego and that
actions taken by TWSIP were on behalf of Innovest.  (Amended Compl. ¶¶ 279, 330-75).

York.  (Amended Compl. ¶¶ 14, 15, 17).  At all relevant times, Mr. Sledziejowski was both the

sole member of Innovest and the sole manager of TWSIP.  (Amended Compl. ¶¶ 16, 18).

Mr. Sledziejowski held a 25% equity interest in defendants MyPlace Development SP. Z

O.O. ("MyPlace Z O.O.") and My Place Development SP. Z O.O. S.K.A. ("MyPlace S.K.A., and

together with MyPlace Z O.O., "MyPlace").  (Amended Compl. ¶¶ 11, 194).  Both of the

MyPlace entities are Polish limited liability companies located in Poznan, Poland.  (Amended

Compl. ¶¶ 22-23).  Mr. Sledziejowski's business partner in MyPlace was defendant Sebastian

Tomasz Kulczyk, and the two men also maintained a personal friendship.  (Amended Compl. ¶¶

28-33).  Mr. Kulczyk, a Polish resident, held a 40% equity interest in MyPlace, and was the

Chairman of the MyPlace Board of Directors.  (Amended Compl. ¶¶ 24-26, 196).  Mr. Kulczyk

also owned and controlled several of the defendants, including (1) a real estate holding and

development company named Kulczyk Real Estate Holding S.A.R.L. ("KREH"); (2) an

investment company named Kulczyk Investments SA ("KI"); and (3) an investment company

named Kulczyk Holding SA ("KH").  (Amended Compl. ¶¶ 41, 42, 46, 47, 50, 51).  All three of

these entities conduct business in Poland.  (Amended Compl. ¶¶ 41, 46, 50).[4]

In addition to Mr. Sledziejowski's personal equity investment in MyPlace, his entity

TWSIP provided several loans to Mr. Kulczyk and the two MyPlace entities.  (Amended Compl.

¶¶ 59-60).  The agreements were executed by Mr. Sledziejowski on behalf of Innovest, as sole

member of TWSIP and by Mr. Kulczyk, among others, on behalf of himself and MyPlace.

(Amended Compl. ¶¶ 60, 64).  In the first such transaction, TWSIP entered into a loan agreement

with Mr. Kulczyk, pursuant to which TWSIP advanced 370,000 Polish Zlotys to Mr. Kulczyk

---

[4]      While the Amended Complaint does not state the domicile of KREH, KI and KH, it is clear from the
pleadings that they are non-U.S. entities and none of the parties have alleged otherwise.  *See, e.g.*, Amended Compl.
¶ 58 (stating that the Movants "are individuals and entities located and based abroad"); Motions to Dismiss at 1
(stating that the Movants all reside outside of the U.S.).

(the "Kulczyk Loan Agreement").  (Amended Compl. ¶¶ 65, 66).  Mr. Kulczyk ultimately failed

to repay the amounts due under the Kulczyk Loan Agreement upon maturity.  (Amended Compl.

¶ 68).  Several months later, TWSIP entered into an investment agreement with MyPlace Z O.O.,

under which TWSIP committed to lend MyPlace up to US$20,000,000.00 (the "Investment

Agreement").  (Amended Compl. ¶¶ 70, 72, 73).  The Investment Agreement required MyPlace

Z O.O. to send notifications relating to the Investment Agreement to TWSIP's address in the

United States.  (Amended Compl. ¶ 77).  In accordance with the Investment Agreement, TWSIP

subsequently provided several loans to the MyPlace entities in the aggregate total amount of

US$12,580,000.00 (the "MyPlace Loan Agreements").  (Amended Compl. ¶¶ 78, 79).  All loan

amounts were advanced to MyPlace in United States dollars from a bank account located in the

United States.  (Amended Compl. ¶¶ 96, 97).  Soon thereafter, MyPlace Z O.O. transferred all of

its rights under the Investment Agreement and the MyPlace Loan Agreements to MyPlace

S.K.A. (the "MyPlace Transfer Agreement").  (Amended Compl. ¶¶ 80, 81).  The MyPlace

Transfer Agreement attached a form of notice to be sent to TWSIP.  (Amended Compl. ¶¶ 83-

85).  This notice was sent by MyPlace Z O.O. to TWSIP in the United States.  (Amended Compl.

¶ 86).

MyPlace engaged in multiple real estate development projects in Poland.  (Amended

Compl. ¶¶ 199-259).  Both the equity and lending relationship between Sledziejowski, Innovest

and TWSIP on the one hand and MyPlace on the other was related to these projects, with the

land purchased by MyPlace serving as security for the loans provided by TWSIP to MyPlace.

(Amended Compl. ¶¶ 199-259).  The agreements in question were governed by Polish law.  (*See*

Decl. of Michael S. Elkin in Support of Motion of Certain Defendants' to Dismiss Amended

Complaints) (the "Elkin Decl.") [Adv. Pro. No. 15-08207, ECF No. 23; Adv. Pro. No. 15-08208,

ECF No. 23] (Exh. A-C) (MyPlace Loan Agreements providing Polish choice of law with disputes settled in Poland).

In December 2009, Mr. Sledziejowski disposed of his MyPlace equity investment. He sold his equity interest in MyPlace to one of the companies owned by Mr. Kulczyk—KREH— for the amount of 12,500 Polish Zlotys (the "Equity Transfer"). (Amended Compl. ¶¶117-119). The Equity Transfer was accomplished through an agreement entitled Shares Sale Agreement Relating to Shares in MyPlace Development Spolka Z Ograniczona Odpowiedzialnoscia Spolka Komandytowa, which was entered into between KREH and Sledziejowski on December 3, 2009 (the "Share Transfer Agreement") (Amended Compl. ¶ 117). The Share Transfer Agreement was governed by Polish law. (*See* Elkin Decl.) (Exh. G-H) (Share Sale Agreements providing Polish choice of law and disputes settled in Luxembourg). KREH failed to pay the amount due to Mr. Sledziejowski in the Equity Transfer. (Amended Compl. ¶ 120).

On the same day, TWSIP assigned its rights under the Investment Agreement and the MyPlace Loan Agreements to KREH in return for an amount equal to only 50% of the outstanding balances due under the MyPlace Loan Agreements, including interest (the "Receivable Transfer"). (Amended Compl. ¶¶ 98-100). The Receivable Transfer was accomplished through three separate assignment agreements between TWSIP and KREH on December 3, 2009 (collectively, the "Assignment Agreements"). (Amended Compl. ¶ 98). The Assignment Agreements were governed by Polish law. (*See* Elkin Decl.) (Exh. D-F) (Assignment Agreements providing for Polish choice of law). Another entity owned by Mr. Kulczyk—KH—subsequently wire transferred US$7,332,380.82 to TWSIP on behalf of KREH. (Amended Compl. ¶¶ 107-08). The wire transfer was made by KH directly to a U.S. bank account maintained by Innovest at Bank of America. (Amended Compl. ¶ 108).

The Amended Complaint portrays Mr. Kulczyk as playing a central role in all the agreements among the parties. Mr. Kulczyk sent emails regarding the Receivable Transfer prior to its consummation, signed the contracts on behalf of the various entities and discussed the MyPlace investments with Mr. Sledziejowski during trips to the United States. (Amended Compl. ¶¶ 60, 71, 110, 132). The email exchange in question allegedly took place between Mr. Sledziejowski and Mr. Kulczyk the day before TWSIP and KREH entered into the Assignment Agreements. (Amended Compl. ¶¶ 109-110).[5]

In January 2013, Mr. Sledziejowski filed a petition for relief under Chapter 11 of the Bankruptcy Code. (Amended Compl. ¶ 143). The Court subsequently entered an order directing the appointment of a Chapter 11 trustee in Mr. Sledziejowski's bankruptcy case, and the Trustee was appointed as Chapter 11 trustee of Mr. Sledziejowski's bankruptcy estate. (Amended Compl. ¶¶ 145-47). Soon thereafter, a stipulation and order was entered converting Mr. Sledziejowski's case to Chapter 7 of the Bankruptcy Code and the Trustee was appointed as the Chapter 7 trustee. (Amended Compl. ¶¶ 148-49, 151). In May 2013, Innovest filed for Chapter 7 protection in this Court and the Trustee was also appointed as the Chapter 7 trustee of the Innovest estate. (Amended Compl. ¶¶ 152-53).

The Trustee brought these adversary proceedings against the Movants, among others, alleging *inter alia* that the Receivable Transfer and the Equity Transfer were made for less than fair value and seeking to recover them as fraudulent conveyances. The Movants argue that this Court lacks personal jurisdiction over them because they reside outside of the United States, the

---

[5]     On December 2, 2009, Mr. Sledziejowski sent an email to Mr. Kulczyk in Polish, which—translated to English—stated in part that, "You of course are aware that I do not have negotiating position, but at the same time I can assure [you] that there shall be no risk related to the potential claims, etc., of which KI is afraid because of the discount." (Amended Compl. ¶ 109). On the same day, Mr. Kulczyk responded in Polish, which—translated to English—stated, "they offer 45%. I know it is a lot, but I promise you, as we spoke, that I will compensate your losses as soon as we get out of the investment." (Amended Compl. ¶ 110).

transactions involved investments outside of the United States and the governing documents contain foreign choice of law provisions.

## **DISCUSSION**

### A. **The Doctrine of Personal Jurisdiction**

Fed. R. Civ. P. 12(b)(2), incorporated herein by Bankruptcy Rule 7012(b), provides for dismissal of a case for lack of personal jurisdiction. *See* Fed. R. Bankr. P. 7012(b). To survive a Rule 12(b)(2) motion, the plaintiff must make a prima facie showing that jurisdiction exists over the defendant. *See O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 659, 673 (2d Cir. 2013) (citing *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010)). This "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks*, 714 F.3d at 673 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)). "[A] court may consider materials outside the pleadings, but must credit plaintiffs' averments of jurisdictional facts as true." *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 566-67 (S.D.N.Y. 2012).

In a Rule 12(b)(2) motion, all pleadings and affidavits are to be construed in a light most favorable to the plaintiff and all doubts resolved in the plaintiff's favor. *See In re Terrorist Attacks*, 714 F.3d at 673 (citing *Penguin Grp.*, 609 F.3d at 34). This is "notwithstanding a controverting presentation by the moving party." *In re Stillwater Capital*, 851 F. Supp. 2d at 567 (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)). But where a "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiffs do not counter that evidence— the allegation may be deemed refuted." *In re Stillwater Capital*, 851 F. Supp. 2d at 567 (quoting

*Schenker v. Assicurazioni Generali S.p.A., Consol.*, 2002 U.S. Dist. LEXIS 12845, at *12

(S.D.N.Y. July 15, 2002)).  Furthermore, "[i]n determining whether a plaintiff has met [its]

burden, [a court] will not draw argumentative inferences in the plaintiff's favor . . . nor must [it]

accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714

F.3d at 673 (internal citations and quotations omitted).

Federal Rule of Bankruptcy Procedure 7004(f) provides that a bankruptcy court may

exercise personal jurisdiction over a defendant properly served under Rule 7004, "[i]f the

exercise of jurisdiction is consistent with the Constitution and laws of the United States."  Fed.

R. Bankr. P. 7004(f).  "Because valid service of process pursuant to Rule 7004(d) is sufficient to

establish personal jurisdiction, state long-arm statutes are inapplicable, and the only remaining

inquiry for a bankruptcy court is whether exercising personal jurisdiction over the defendant

would be consistent with the Due Process Clause of the Fifth Amendment."  *Bickerton v. Bozel*

*S.A. (In re Bozel S.A.)*, 434 B.R. 86, 97 (Bankr. S.D.N.Y. 2010) (citing *Enron Corp. v. Arora (In*

*re Enron Corp.)*, 316 B.R. 434, 440, 444-45 (Bankr. S.D.N.Y. 2004)).

A court must conduct a two-part inquiry to determine whether personal jurisdiction exists

over a defendant.  First, the court needs to examine if the defendant has "'the requisite minimum

contacts with the United States at large.'"  *Picard v. Chais (In re Bernard L. Madoff Inv. Sec.*

*LLC)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010) (quoting *Cruisephone, Inc. v. Cruise Ships*

*Catering & Servs., N.V. (In re Cruisephone, Inc.)*, 278 B.R. 325, 331 (Bankr. E.D.N.Y. 2002));

*see also In re Amaranth Nat. Gas Commodities Litig.*, 587 F. Supp. 2d 513, 527 (S.D.N.Y. 2008)

("In determining whether personal jurisdiction exists over a foreign defendant who . . . has been

served under a federal service of process provision, a court should consider the defendant's

contacts through the United States and not just those contacts with the forum.").  Second, if such

9

contacts are found to exist, the court must then determine the reasonableness of exercising

personal jurisdiction over the defendant under the circumstances and whether doing so would

"offend 'traditional notions of fair play and substantial justice.'" *Sec. Investor Prot. Corp. v.*

*Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011) (quoting *Asahi*

*Metal Indus. Co. v. Super. Ct. Cal.*, 480 U.S. 102, 113 (1987) (internal quotations omitted);

*Metro. Life Ins. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)); *see also Bank*

*Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) ("Where a

plaintiff makes the threshold showing of the minimum contacts required for the first test, a

defendant must present a compelling case that the presence of some other considerations would

render jurisdiction unreasonable.") (internal quotations omitted).

When examining the first question of "minimum contacts," courts differentiate between

"specific" and "general" personal jurisdiction. *See In re Terrorist Attacks*, 714 F.3d at 673.

Either is adequate to satisfy the minimum contacts requirement of the Due Process Clause. *See*

*id.* at 674 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16

(1984)). Specific jurisdiction is established when a foreign defendant "'purposefully direct[s] his

activities at residents of the forum' and . . . the underlying cause of action 'arise[s] out of or

relate[s] to those activities.'" *Madoff*, 460 B.R. at 117 (quoting *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 472 (1985)); *see also Bank Brussels Lambert*, 305 F.3d at 127 ("Where the claim

arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction—

minimum contacts exist where the defendant 'purposefully availed' itself of the privilege of

doing business in the forum and could foresee being 'haled into court' there.") (internal citations

and quotations omitted). The question of whether minimum contacts are present to justify the

assertion of specific jurisdiction over a nonresident defendant "focuses on 'the relationship

among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121

(2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). "First, the

relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State.'"

*Walden*, 134 S.Ct. at 1122 (emphasis in original). Second, the "''minimum contacts' analysis

looks to the defendant's contacts with the forum State itself, not the defendant's contacts with

persons who reside there." *Id.* Third, "the plaintiff cannot be the only link between the

defendant and the forum. Rather, it is the defendant's conduct that must form the necessary

connection with the forum State that is the basis for its jurisdiction over him." *Id.*

   In contrast, general jurisdiction "is based on the defendant's general business contacts

with the forum . . . and permits a court to exercise its power in a case where the subject matter of

the suit is unrelated to those contacts." *In re Terrorist Attacks*, 714 F.3d at 674 (quoting *Metro.

Life Ins.*, 84 F.3d at 568); *see also Helicopteros*, 466 U.S. at 414-16 & nn.8-9. Since "general

jurisdiction is not related to the events giving rise to the suit, . . . courts impose a more stringent

minimum contacts test, requiring the plaintiff to demonstrate the defendant's 'continuous and

systematic general business contacts. . . .'" *In re Terrorist Attacks*, 714 F.3d at 674 (quoting

*Helicopteros*, 466 U.S. at 416 & n.9).

   If minimum contacts are present, a court must then turn to the second question of whether

the exercise of jurisdiction will "offend 'traditional notions of fair play and substantial justice.'"

*Madoff Inv. Sec.*, 460 B.R. at 117 (quoting *Asahi Metal Indus.*, 480 U.S. at 113; *Metro. Life Ins.*,

84 F.3d at 567). In determining whether the assertion of jurisdiction is reasonable in a given

case, courts will consider the following factors: "(1) the burden that the exercise of jurisdiction

will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest

of the states in furthering substantive social policies." *Bank Brussels Lambert*, 305 F.3d at 129

(internal citations and quotations omitted).

### B.  The Complaint Fails to Establish Specific Jurisdiction

In opposing these motions, the Trustee asserts specific jurisdiction over the Movants.[6]

But the Amended Complaint currently fails to make a *prima facie* showing of specific personal

jurisdiction over the Movants.  As a threshold matter, the Court notes the overwhelmingly

foreign nature of the transactions at issue here.   Investments were made by Mr. Sledziejowski

and his entities in Polish real estate with Polish entities under Polish law.  When Mr.

Sledziejowski made the decision to dispose of those investments, he and his entities liquidated

the Polish investments by selling them to non-U.S. entities.  It is undisputed that each of the

Movants is located outside of the United States and that the transactions at issue involved

investments outside of the United States.  (Amended Compl. ¶ 58 (stating that the Movants are

"individuals and entities located and based abroad"); ¶¶ 199-228, 244, 247, 252-53, 257-59

(discussing purchase and development of real property in Poland through MyPlace, that the

---

[6]      *See* Memo. of Law in Opposition to the Motions to Dismiss at 7 [Adv. No. 15-08207, ECF No. 26; Adv.
No. 15-08208, ECF No. 26] (the "Trustee's Opposition") (stating that "[h]ere, the Trustee alleges that specific
jurisdiction exists."); Hr'g Tr. 64:1-6, 65:14-67:4, Nov. 20, 2015 [Adv. No. 15-08207, ECF No. 30; Adv. No. 15-
08208, ECF No. 30].  But the Trustee sometimes alludes to principles of general jurisdiction.  (*See, e.g.*, Trustee's
Opposition at 10) (arguing that the Amended Complaint makes more than ninety allegations specifying
"Defendants' pervasive contacts with the United States that directly relate to the asserted causes of action," but then
citing to brokerage accounts maintained by Mr. Kulczyk that appear unrelated to the transactions in question).  In
addition, the Trustee's counsel appears to reference *in rem* jurisdiction based on a cause of action for turnover
against MyPlace.  *See* Hr'g Tr. 47:6-21, Nov. 20, 2015; Amended Compl. ¶¶ 452-459.  The turnover action alleges
that the Share Transfer Agreement was never properly executed and Mr. Sledziejowski never received payment and
he therefore still has a 25% equity interest in MyPlace.  *See* Hr'g Tr. 47:6-10, Nov. 20, 2015; Amended Compl. ¶¶
455-56.  While it is premature for the Court to address the merits of the turnover claim, the Court notes that a
turnover cause of action is only proper to recover an asset that is already property of the estate.  *See Geron v.
Peebler (In re Pali Holdings, Inc.)*, 488 B.R. 841, 852 n.39 (Bankr. S.D.N.Y. 2013) (turnover power is not proper to
"recover assets with disputed title when the estate's claim to ownership is legitimately debatable.").

Notwithstanding these references, the Court evaluates only the question of specific jurisdiction given that
the Trustee's counsel has asserted only specific jurisdiction in opposing these Motions to Dismiss.

lending relationship between Sledziejowski and/or Innovest and MyPlace was with respect to these projects, and that the land purchased through these projects was used as security for the loans provided by TWSIP to MyPlace)); *cf. Lehman Bros. Special Fin. Inc. v. Bank of Am., Nat'l Ass'n (In re Lehman Bros. Holdings Inc.)*, 535 B.R. 608, 622 (Bankr. S.D.N.Y. 2015) (in ruling that there was lack of personal jurisdiction over defendant, noting that defendant's connection with the United States was limited to knowledge that plaintiff was domiciled in the United States and ability to foresee harm would be felt in the United States and that defendant "was organized and headquartered outside of the United States; had no offices, employees, or property in the United States; was not registered to, and did not, conduct business in the United States; and did not advertise or otherwise solicit business in the United States.").

Moreover, the agreements at issue are governed by Polish law.  (*See* Elkin Decl.) (Exh. A-H).[7]  *Cf. Madoff*, 460 B.R. at 117 ("The Second Circuit has indicated that entering into a contract with a New York choice of law clause is 'a significant factor in a personal jurisdiction analysis because the parties . . . invoke the benefits and protections of New York law.") (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22-23 (2d Cir. 2004)); *AIG Fin. Prods. Corp. v. Public Util. Dist. No. 1 of Snohomish Cnty., Wash.*, 675 F. Supp. 2d 354, 364 (S.D.N.Y. 2009)); *see also Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) ("[A] choice-of-law provision 'standing alone would be insufficient to confer jurisdiction,' but combined with other factors, it may reinforce a party's 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'") (quoting *Burger King*, 471 U.S. at 482).  While not determinative, the choice of law is relevant to the question of whether the Movants could foresee

---

[7]     Additionally, it appears that the MyPlace Loan Agreements and the Share Sale Agreement provide that disputes be adjudicated in foreign courts.  (*See* Elkin Decl.) (Exh. A-C, G-H).

any dispute regarding the transactions in question would be litigated in the United States. *See Picard v. Estate (Succession) of Doris Igoin (In re Bernard L. Madoff Inv. Sec. LLC)*, 525 B.R. 871, 885 (Bankr. S.D.N.Y. 2015) (noting that the absence of a New York choice of law provision was relevant, though not determinative to foreseeability, but ultimately finding that the establishment of New York trading accounts for purpose of investing in the U.S. stock markets made it foreseeable that disputes regarding those accounts would be litigated in the United States).

Against this backdrop of Polish contacts, the Court must evaluate the contacts in the Amended Complaint on a defendant by defendant basis.[8] *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually."). When the Amended Complaint is parsed in that fashion, there are only one or two contacts alleged against most of the Movants that are relevant to specific jurisdiction. But the alleged contacts do not provide enough detail to establish personal jurisdiction against the individual Movants.

1. MyPlace Entities

Significantly, there are no allegations connecting the two MyPlace entities to the transfer of the debt and equity from TWSIP to KREH, the actions upon which the alleged fraudulent transfer is based.[9] The Amended Complaint only alleges that the two MyPlace entities entered into the Investment Agreement and the MyPlace Loan Agreements, and received the proceeds

---

[8]    The papers submitted by the Trustee do not break down the contacts in this manner, so the Court has independently reviewed the lengthy Amended Complaint per Movant.

[9]    While not relied upon in the Trustee's Opposition on personal jurisdiction, the Amended Complaint includes an alternative theory based on Innovest paying one tranche of the loans to MyPlace, without compensation. (Amended Compl. ¶¶ 423-451). At the hearing on the Movants' motions to dismiss, Trustee's counsel stated that this alternative theory would be invoked if the Court did not decide in favor of the Trustee on the claim that TWSIP is the alter ego of Innovest. *See* Hr'g Tr. 39:2-41:9, Nov. 20, 2015. As the question of whether TWSIP is an alter ego of Innovest has not yet been decided, it is unclear—and the Trustee's Opposition does not elaborate—how this alternative theory should be construed at this time for purposes of personal jurisdiction.

from those transactions.  But merely entering into a contract with a U.S. based entity is not—by

itself—sufficient to establish specific jurisdiction.  *See Walden*, 134 S. Ct. at 1122 ("'[M]inimum

contacts' analysis looks to the defendant's contacts with the forum State itself, not the

defendant's contacts with persons who reside there."); *Burger King*, 471 U.S. at 478 ("If the

question is whether an individual's contract with an out-of-state party *alone* can automatically

establish sufficient minimum contacts in the other party's home forum, we believe the answer

clearly is that it cannot.") (emphasis in original).  Rather, courts have required a defendant to

have "purposefully 'reach[ed] out beyond' their State and into another by, for example, entering

a contractual relationship that 'envisioned *continuing and wide-reaching contacts*' in the forum

State. . . ."  *Walden*, 134 S. Ct. at 1122 (emphasis added) (quoting *Burger King*, 471 U.S. at 479-

80).

      The Amended Complaint does not allege continuing and wide-reaching contacts between

MyPlace and the United States that are related to the contractual relationships at issue.  The

Court disagrees with the Trustee's claim that the four loan tranches of debt under the MyPlace

Loan Agreements, the accruing of interest on those loans, and the obligation of MyPlace to repay

the loans are sufficient.  Rather, these contacts arose solely based on the location of TWSIP in

the United States and did not involve activities through which MyPlace purposely availed itself

of the privilege of conducting its activities in the United States.  "[I]t is essential in each case that

there be some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger

King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  It is not evident

to the Court that any of MyPlace's rights with respect to the MyPlace Loan Agreements "was

affected, much less enhanced," by TWSIP's "status as a United States domiciliary." *Lehman Bros.*, 535 B.R. at 622.

The Trustee cites *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y. 3d 65 (2006), to support its argument that negotiation and formation of a contractual relationship with a U.S. entity constitutes necessary contacts for purposes of personal jurisdiction. But the facts of that case are distinguishable. In that case, the New York Court of Appeals concluded that "[w]e have in the past recognized CPLR 302(a)(1) long-arm jurisdiction over commercial actors and investors using electronic and telephonic means to project themselves into New York to conduct business transactions . . . and we do so again here." *Id.* at 71. As to whether that defendant could have reasonably expected to defend its actions in New York, the court focused heavily on the number of contacts with New York and the business model of the defendant. *See id.* at 71-72. Notably, the court observed that over the course of 13 months, the defendant "had engaged in approximately eight other bond transactions with DBSI's employee in New York, availing itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize our courts to exercise jurisdiction over its person." *Id.* at 72. It also found that the defendant was "a sophisticated institutional trader" and negotiating the type of financial transactions in question was "a major aspect of [its] mission." *Id.* No such facts have been alleged in this case.

The Trustee also argues that the transfer of funds made by TWSIP out of the United States to MyPlace in Poland in connection with the MyPlace Loan Agreements constitutes a contact between MyPlace and the United States for purposes of the specific jurisdiction analysis. But that transfer was made by TWSIP, not the MyPlace entities. In questions of specific jurisdiction, "the relationship must arise out of contacts that the 'defendant *himself*' creates with

the forum State." *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475); *see also*

*Helicopteros*, 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not

an appropriate consideration when determining whether a defendant has sufficient contacts with

a forum State to justify an assertion of jurisdiction."). Indeed, courts have held that the mere

knowing receipt of funds in a bank account is insufficient to establish jurisdiction. *See, e.g.*,

*Rushaid v. Pictet & Cie*, 2014 N.Y. Misc. LEXIS 3888, at *8 (N.Y. Sup. Ct. Aug. 26, 2014)

("While plaintiffs submitted documents showing that defendants knew of the third-party

monetary transfers from a New York correspondent account for the benefit of the Pictet

accounts, this alone does not constitute purposeful conduct. This passive receipt of funds do not

constitute 'volitional acts' by defendants and, as such, defendants did not avail themselves of the

privilege of conducting activities within the forum State, and thereby neglect to invoke the

benefits and protections of its laws.") (internal citations and quotations omitted).

The Amended Complaint also makes an allegation regarding a notice sent by MyPlace Z

O.O. to TWSIP in connection with the MyPlace Transfer Agreement. (Amended Compl. ¶ 86).[10]

But the mailing of one notice to TWSIP in the United States is not necessarily meaningful

enough contact to establish specific jurisdiction. As noted by the Supreme Court, "[d]ue process

requires that a defendant be haled into court in a forum State based on his own affiliation with

the State, not based on 'random, fortuitous, or attenuated' contacts he makes by interacting with

other persons affiliated with the State." *Walden*, 134 S. Ct. at 1123 (quoting *Burger King*, 471

U.S. at 475); *see also Burger King*, 471 U.S. at 475 ("[T]he purposeful availment requirement

---

[10] The Amended Complaint alleges as a conclusory manner that *all* of the Movants sent notices to the United States and communicated with individuals within the United States regarding the Investment Agreement, the MyPlace Transfer Agreement, the Kulczyk Loan Agreement and the MyPlace Loan Agreements. (Amended Compl. ¶ 87). When examined closely, however, the Amended Complaint only makes one specific allegation of a notice sent by one defendant: one notice sent by MyPlace Z O.O. to TWSIP in connection with the MyPlace Transfer Agreement (Amended Compl. ¶ 86). The Court has no further details about the frequency, content, and recipients of notices or any related communications. Additional information on this issue may change the jurisdictional analysis.

ensures that a defendant will not be haled into a jurisdiction solely as a result of *random, fortuitous, or attenuated contacts*.") (emphasis added) (internal citations and quotations omitted).

2. Kulczyk Entities

The three Kulczyk entities have no connection to the entry into the MyPlace Loan Agreements or the initial equity investment by Mr. Sledziejowski in MyPlace. Rather, two of these entities are allegedly involved in the winding up of the transactions which occurred with an entity domiciled in the United States. (*See, e.g.,* Amended Complaint ¶¶ 98-100, 117-119) (KREH signed the Share Transfer Agreement and the Assignment Agreements); (*see id.* ¶¶ 107-108) (KH made payment on behalf of KREH). But once again, the allegations are thin when analyzed as to the individual defendants. Moreover, the Amended Complaint lists no contacts between KI and the United States. The only references to KI in the Amended Complaint, aside from in the introductory paragraph, are allegations that KI did business in Poland, was owned by Mr. Kulczyk, that it was an insider of the Sledziejowski and Innovest estates, and was referred to in an email that Mr. Sledziejowski sent to Mr. Kulczyk. (*See* Amended Compl. ¶¶ 46-49, 109). The only one of these allegations that relates to the United States is the Trustee's allegation of insider status. But such a legal conclusion cannot form the basis for jurisdiction. *See In re Terrorist Attacks*, 714 F.3d at 673 ("[I]n determining whether a plaintiff has met [its] burden, [a court] will not draw argumentative inferences in the plaintiff's favor . . . nor must [it] accept as true a legal conclusion couched as a factual allegation."); *Cortland St. Recovery Corp. v. Deutsche Bank AG*, 2015 U.S. Dist. LEXIS 114533, at *5-*6 (S.D.N.Y. Aug. 28, 2015) (when determining *prima facie* case of personal jurisdiction, "the Court need not 'accept as true a legal conclusion couched as a factual allegation. . . .'") (quoting *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998); *cf. Bell Atl. Corp. v Twombly*, 550 U.S. 544, 555 (2007) ("While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . .") (internal citations and quotations omitted).

While the Trustee concedes that KI was not a named party to the agreements in question, the Trustee contends that the actions of certain defendants should be considered together for purposes of jurisdiction.  The Trustee's Amended Complaint does not allege that each of the Movants were alter egos of one another or articulate a clear theory upon which all of the Movants' activities should be attributed to each of the other Movants.  But in her brief opposing these motions, the Trustee invokes the "mere department" doctrine as to Movants KREH, KH and KI.  That doctrine allows a court to exercise jurisdiction over a defendant not otherwise subject to jurisdiction where the defendant is a "mere department" of an entity over which the court has jurisdiction.  *See Lehman Bros.*, 535 B.R. at 625.  The doctrine considers four factors:

> (1) Whether there exists common ownership and the presence of an interlocking directorate and executive staff,
> (2) The degree of financial dependency of the subsidiary on the parent,
> (3) The degree to which the parent interferes in the selection and assignment of the subsidiary's executive personnel and fails to observe corporate formalities, and
> (4) The degree of the parent's control of the subsidiary's marketing and operational policies.

*Id.* (quoting *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120-22 (2d Cir. 1984)).  The Trustee concedes, however, that she needs jurisdictional discovery "to determine if the interplay among Defendants could give rise to the 'mere department' doctrine." (Trustee's Opposition at 18); *see Lehman Bros.*, 535 B.R. at 625-26 (rejecting personal jurisdiction for failure to meet elements of mere department doctrine where plaintiff had not established that the court had jurisdiction over any of the relevant entities and had not specified

the entity of which the defendant should be deemed a mere department); *see also Official Comm. of Unsecured Creditors v. Bay Harbour Master Ltd. (In re BH S&B Holdings LLC)*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) (noting in context of argument regarding piercing the corporate veil, "[i]t is well-established that wholly-owned subsidiaries may share officers, directors and employees with their parent, without requiring the court to infer that the subsidiary is a mere instrumentality for the parent and without requiring the court to conclude that those officers and directors were not functioning properly."); *Official Comm. of Unsecured Creditors v. American Tower Corp. (In re Verestar, Inc.)*, 343 B.R. 444, 460 (Bankr. S.D.N.Y. 2006) ("[C]onclusory allegations of control are not sufficient to state a claim for alter ego liability or piercing the corporate veil."). Given that the Trustee does not make sufficient allegations to satisfy the "mere department" doctrine, that theory does not provide a basis for specific jurisdiction on the present record.[11]

## C. Jurisdictional Discovery Is Appropriate

In addition to requesting discovery on the "mere department" doctrine, the Trustee seeks broader jurisdictional discovery. More specifically, the Trustee requests jurisdictional discovery relating to four categories of information: (i) the extent of the Movants' contacts with the United States (which the Court takes to mean contacts necessary to satisfy general jurisdiction), (ii) the extent of the Movants' contacts with the United States relating to the transactions set forth in the

---

[11]     The Trustee appears to have taken contradictory positions regarding the aggregation of contacts between the Movants. For instance, in her opposition, the Trustee states that she "should be entitled to determine if the interplay among Defendants could give rise to the 'mere department' doctrine." (Trustee's Opposition at 18). The Trustee then cited the legal standard, but made no legal argument that the standard had been met. (*See id.* at 18-19). At the hearing on the Movants' motions, however, the Trustee's counsel appeared to argue that the mere department doctrine had already been met and the Court should therefore find that it has personal jurisdiction over certain of the Movants. *See* 42:15-43:17, 82:17-20.

Relatedly, the Trustee alleges that KI is the parent of KREH and argues that the contacts of KREH are therefore attributable to KI. (*See* Trustee's Opposition at 12 n1.) But that information is not contained in the Amended Complaint. Moreover, the Trustee does not address all the other factors of the mere department doctrine.

Amended Complaint (which the Court takes to mean contacts necessary to satisfy specific jurisdiction); (iii) whether the interplay among the Movants could give rise to the "mere department" doctrine, and (iv) the extent to which the actions of Mr. Kulczyk may be attributed to each of the named corporate Movants under an agent-principal relationship. (*See* Adv. Pro. No. 15-08207, ECF No. 29; Adv. Pro. No. 15-08208, ECF No. 29).

"At the jurisdictional stage, '. . . courts enjoy broad discretion in deciding whether to order discovery.'" *Tymoshenko v. Firtash*, 2013 WL 1234943, at *7 (S.D.N.Y. Mar. 27, 2013) (quoting *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 811 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008)). In this circuit, courts "have allowed jurisdictional discovery where a plaintiff has made 'a sufficient start toward establishing personal jurisdiction.'" *Hollenbeck v. Comeq, Inc.*, 2007 U.S. Dist. LEXIS 63547, at *8 (N.D.N.Y. Aug. 28, 2007) (quoting *Uebler v. Boss Media*, 363 F. Supp. 2d 499, 506 (E.D.N.Y. 2005)); *see also Smit v. Isiklar Holding A.S.*, 354 F. Supp. 2d 260, 263 (S.D.N.Y. 2005) ("[A] court may order limited discovery targeted at the missing jurisdictional elements, if plaintiff has shown that such an exercise would serve to *fill any holes* in its showing.") (internal citations and quotations omitted). Moreover, jurisdictional discovery "is typically permitted where the facts necessary to establish personal jurisdiction . . . lie exclusively within the defendant's knowledge." *Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 2012 Bankr. LEXIS 2748, at *21 (Bankr. S.D.N.Y. June 15, 2012) (internal citations and quotations omitted).

The facts supports jurisdictional discovery here. These include that the Trustee's lacks knowledge about the relevant facts (as compared with the counterparties to these transactions), and that the facts about the Movants' contacts relevant to personal jurisdiction lie within the Movants' knowledge. That the Movants did not provide declarations of any witnesses in support

of their motions to dismiss also supports jurisdictional discovery.  Given the wide latitude

afforded the Court on jurisdictional discovery, moreover, the Court finds that the Trustee has

made a "sufficient start toward establishing personal jurisdiction."  The Amended Complaint

includes allegations of visits by Mr. Kulczyk to the United States related to the MyPlace

transactions and notices sent by some Movants to the United States; all these support discovery

regarding the contacts relevant to specific jurisdiction.[12]  Furthermore, the Trustee's allegations

relating to common ownership of many of these entities and Mr. Kulczyk's central role in the

transactions support discovery regarding the mere department doctrine and related theories.[13]

And while the Trustee's Opposition asserted only specific jurisdiction, the Amended Complaint

makes numerous allegations that may lend themselves to establishing general jurisdiction in

these cases, including Mr. Kulczyk's visits to the United States generally.[14]  While the lack of

details as to all these allegations render them currently insufficient to provide personal

jurisdiction, they are sufficient to satisfy the requirements for jurisdictional discovery.

---

[12]    While not mentioned anywhere in the Trustee's Opposition or the Amended Complaint, several of the agreements in question state that they were "concluded in New York."  (*See, e.g.,* Elkin Decl. at Exhibits A, D, E, and F).  Given the lack of a record or even input from the parties as to this language, the Court will not speculate on its relevance.  But such a provision may be probative on the question of personal jurisdiction.  *See Karlin v. Avis*, 326 F. Supp. 1325, 1328 (E.D.N.Y. 1971) (evaluating relevance of agreement being "concluded in New York" for purposes of assessing personal jurisdiction under N.Y. CPLR § 302(a)(1)).  Accordingly, the Court concludes that it would be an appropriate subject for jurisdictional discovery.

[13]    Given the Trustee's arguments regarding the foreseeability of causing harm in the forum state and the Trustee's desire for additional information relating to specific jurisdiction contacts, the Court believes that jurisdictional discovery will provide additional information to help adjudicate the issue of foreseeability.

[14]    For example, the Trustee's Opposition cites to actions taken by Mr. Kulczyk in the United States with respect to a so-called Penson account referenced in the Amended Complaint.  (*See* Trustee's Opposition at 11-12).  The Amended Complaint, however, contains no information linking the Penson account to the transactions at issue in the adversary proceedings and these allegations do not support a finding of specific jurisdiction, which requires that the claims arise from or relate to the contacts in question.  *See Bank Brussels Lambert*, 305 F.3d at 127.  Additionally, Trustee's counsel at the hearing on this Motion asserted that Mr. Sledziejowski had stated that Mr. Kulczyk worked in the United States for approximately one year around the time that was critical to the transactions at issue, an allegation not found in the Amended Complaint.  *See* Hr'g Tr. 65:17-23, Nov. 20, 2015.

Accordingly, the Court finds that the Trustee's requested jurisdictional discovery is appropriate.  Such discovery will include:  (i) the production of documents by Mr. Sledziejowski and the Movants; (ii) a deposition of Mr. Sledziejowski, and (iii) a deposition of Mr. Kulczyk in both his individual capacity and in his capacity as principal of the corporate Movants.  (*See* Adv. Pro. No. 15-08207, ECF No. 29; Adv. Pro. No. 15-08208, ECF No. 29).  Movants' counsel raised a concern about Mr. Kulczyk appearing in the United States for a deposition.  (*See* Hr'g Tr. 79:1-81:20, Nov. 20, 2015).  The Trustee subsequently proposed to depose Mr. Kulczyk in person in either Luxembourg, London, or Warsaw, which are the locations in which KI operates.  (*See* Adv. Pro. No. 15-08207, ECF No. 29; Adv. Pro. No. 15-08208, ECF No. 29).  The Court concludes that such an overseas deposition is an appropriate and efficient way to proceed.[15]

---

[15]    Given the court's conclusion that jurisdictional discovery is appropriate, the Court will not analyze in detail the contacts of the other Movants.  But two observations might assist the parties in jurisdictional discovery.

First, the Court notes that the only specific jurisdiction contact alleged against KH is that it transferred funds—allegedly on behalf of KREH—from abroad to an Innovest bank account in the United States as payment for the Receivable Transfer.  (Amended Compl. ¶¶ 107-08).  But the one time transfer of funds by a non-U.S. entity from abroad into the U.S. bank account of a counterparty located in the United States does not necessarily constitute continuing and wide-ranging contact of the type cited by the Supreme Court in *Walden*.  The significance of such a transfer must be considered in light of the other contacts between the defendant and the forum state.  *Compare Pramer S.C.A. v. Abaplus Int'l Corp.*, 907 N.Y.S.2d 154, 159 (App. Div. 1st Dep't 2010) ("[T]he mere payment into a New York account does not alone provide a basis for New York jurisdiction, especially when all aspects of the transaction occur out of state, absent more extensive New York banking relating to the transaction in issue.") (internal citations and quotations omitted) *with Igoin*, 525 B.R. at 884 (specific jurisdiction found where defendants entered into customer agreements negotiated and signed in France, written in French and were governed by French law but contracts were with BLMIS, "a New York broker dealer, to invest over $66 million, or so they believed, in United States stock markets, activities that could take place only in the United States.").

Second, there is a similar lack of details in allegations about Mr. Kulczyk, whose contacts with the United States are more significant.  But even as to Mr. Kulczyk, the Amended Complaint does not provide many details.  For example, it does not explain where his emails about these transactions were sent from or received.  Similarly, allegations about his visits to the United States state that they were in connection with the investments in MyPlace and his Penson account, but fail to provide details about the specific transactions (equity investment, loans or both) or on what corporate entity or entities behalf Mr. Kulczyk was acting.  (*See* Amended Complaint ¶ 132).

In light of the Court's conclusion that jurisdictional discovery is appropriate as to the remaining Movants and given that Mr. Kulczyk acted on behalf of at least some of those Movants, the Court will defer a more comprehensive evaluation of Mr. Kulczyk until jurisdictional discovery is complete.

Given the Court's ruling on personal jurisdiction, it is inappropriate for it to reach the other grounds for dismissal raised by the Movants. *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdiction and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted is with prejudice."); *Gustin v. Hoffman*, 2008 U.S. Dist. LEXIS 60046, at *2 (M.D. Fla. July 29, 2008) ("A court must address a challenge to its exercise of personal jurisdiction before looking at the other claims in a motion to dismiss.") (internal citations and quotations omitted); *Clark v. Meijer, Inc.*, 376 F. Supp. 2d 1077, 1083 (D. N.M. 2004) ("If a court determines that personal jurisdiction is lacking as to some or all of the defendants, all other claims and issues related to those claims brought against those defendants are rendered moot.") (internal citation omitted); *see also Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002) ("The Court considers the jurisdictional issues first, because a dismissal for lack of jurisdiction renders all other claims moot.") (citing *Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case."); *Calero v. Immigration and Naturalization Serv.*, 957 F.2d 50 (2d Cir. 1992); *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358 (2d Cir. 2000)).

## **CONCLUSION**

For the reasons stated above, the Court finds that it lacks personal jurisdiction over the Movants but grants jurisdictional discovery to the Trustee.  Accordingly, the motions to dismiss are denied without prejudice.  The Movants should settle an order on three days' notice.  The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice.  A copy of the notice and proposed order shall also be served upon counsel for the Trustee.

Dated:  New York, New York
        October 21, 2016

                                                                    _/s/ Sean H. Lane_____
                                                                    UNITED STATES BANKRUPTCY JUDGE